Filed 1/5/16  P. v. Sanchez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F068319 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. BF148303A) |
| MANUEL SANCHEZ, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Gary T. Friedman, Judge.

Dale Dombkowski, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Jennevee H. de Guzman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

A jury found defendant Manuel Sanchez guilty of attempted murder (Pen. Code, §§ 664, 187, subd. (a), count 1),[1] and assault with a firearm (§ 245, subd. (a)(2), count 2). In addition, the jury also found true an enhancement allegation that defendant personally discharged a firearm which proximately caused great bodily injury during the commission of attempted murder (§ 12022.53, subd. (d)).

Defendant was sentenced to a prison term of nine years on count 1, plus 25 years to life for the section 12022.53, subdivision (d) enhancement. A term of four years was imposed on count 2, which was stayed pursuant to section 654.

On appeal, defendant contends: (1) the trial court abused its discretion by denying his motions for mistrial; (2) the enhancement allegation should be reversed because the trial court erred in failing to define "proximate cause" sua sponte, and the court did not adequately respond to the jury's request for a definition of the term; and, (3) defense counsel was ineffective as a result of the foregoing issues. We affirm.

# FACTS

On April 26, 2013, sometime after 9:00 p.m., Sara Gamino, Gamino's son, Jennifer J., and Stephanie J., drove to Jose C.'s grandmother's home to drop off some pain medication to Jose C. and to give him a ride home. Gamino is Jose C.'s girlfriend, and Jennifer J. and Stephanie J. are his sisters. Jose C.'s mother, Marebel Nevarez, was also present. Jose C. crossed the street to meet Gamino at her car, but after retrieving his medication, decided not to ride home with Gamino.

As he crossed the street to go back inside his grandmother's house, a black Nissan Altima drove by, nearly hitting him. Jose C. exchanged words with the vehicle's occupants and the vehicle stopped.

---

[1]All undesignated statutory citations are to the Penal Code unless otherwise stated.

2.

Defendant exited the Altima from the passenger's side, aimed a rifle at Jose C., said, "'now what,'" and fired multiple shots. Jose C. was struck once in his left shoulder and once in his left buttock. Defendant got back into the Altima and fled the scene.

Gamino followed the Altima in her vehicle. She believed she recognized the shooter as defendant, a Colonia Baker criminal street gang member who goes by the street moniker of "Flaco." During the pursuit, the shooter stuck his gun outside the vehicle's window and aimed it at Gamino's car. As a result, Gamino turned left and lost sight of the Altima. She dropped off her son at her mother's house and made two other stops to allow some time to pass before she drove to defendant's house, where she had been on a prior occasion. When she arrived at defendant's home, she saw the Altima from the shooting parked outside.

Officer Ryan Vaughan of the Bakersfield Police Department interviewed Jose C. at the scene of the incident. Jose C. told Vaughan that earlier that day,[2] a man named Erik Galvan was stabbed in the parking lot of Gamino's apartment complex. Galvan is friends with Gerardo C. (Jerry), a teenager Jose C. does not get along with. Jerry is also defendant's nephew. After the stabbing incident, several individuals made threats against Jose C. Jose C. also began to fear defendant.

The following day, Vaughan interviewed Jennifer J. She informed Vaughan that Gamino recognized the shooter as defendant.

Several days after the shooting, Vaughan interviewed Jose C. a second time. Jose C. identified the shooter as defendant in a photo lineup. At trial, he claimed he could not identify the shooter, but testified his "homeys" told him to plan on moving if he snitched.

Gamino's testimony as to the identity of the shooter wavered. During a photo lineup conducted several days after the shooting, she identified the shooter as defendant

---

[2]Jose C. testified at trial that the stabbing occurred on the same day of the shooting, but subsequently testified the stabbing occurred a few weeks prior to the shooting.

with 100 percent certainty. However, prior to testifying, Gamino told the prosecutor defendant was not the shooter. On direct examination, she positively identified defendant, but on recross-examination, she indicated she saw someone who looked like defendant that could have been the shooter. Gamino testified she was afraid of being labeled a snitch for fear of retribution.

Nevarez was able to positively identify defendant as the shooter in a photo lineup and at trial.

Jennifer J. immediately recognized defendant in a photo lineup and at trial.

## DISCUSSION

### I. Motions for Mistrial

A trial court should only grant a motion for mistrial when the opportunity for a fair trial has been irreparably lost and cannot be cured by admonition or instruction. (*People v. Avila* (2006) 38 Cal.4th 491, 573.) "'Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.'" (*Ibid.*) Accordingly, we review a trial court's ruling on a motion for mistrial for abuse of discretion. (*People v. Valdez* (2004) 32 Cal.4th 73, 128.) Under this standard, we will not disturb the trial court's ruling "'unless the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Dunn* (2012) 205 Cal.App.4th 1086, 1094.)

#### A. First Motion for Mistrial

In April of 2013, defendant received a ride home from a man who was stopped and arrested for illegal possession of a firearm. Defendant was neither arrested nor charged in connection with the incident. The court granted defense counsel's motion in limine to exclude evidence of the event, reasoning that because the firearm was concealed, no reasonable inference could be drawn that defendant had any knowledge of the weapon.

4.

During trial, the prosecutor asked Officer Vaughan whether he was present for defendant's arrest on May 8, 2013. Vaughan stated he was present and added, "I also contacted [defendant] on a separate date in which a young man fled from the vehicle he was in carrying a firearm." Outside the presence of the jury, defense counsel moved for mistrial. The court found Vaughan's comment was not deliberately elicited, ordered it stricken, admonished the jury, and denied the motion.

Defendant argues the challenged testimony was incurably prejudicial and, as a result, his conviction should be reversed. We disagree.

A witness's inadvertent or volunteered statement can provide the basis for a finding of incurable prejudice. (*People v. Wharton* (1991) 53 Cal.3d 522, 565.) A statement "exposing a jury to a defendant's prior criminality presents the possibility of prejudicing a defendant's case and rendering suspect the outcome of the trial." (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1580-1581 [witness's reference to defendant's parole officer on cross-examination was improper but resulted in harmless error]; *People v. Valdez*, *supra*, 32 Cal.4th at p. 124-125 [officer's statement he interviewed defendant at prison was error but cured by jury admonition]; *People v. Morgan* (1978) 87 Cal.App.3d 59, 76, disapproved on other grounds in *People v. Kimble* (1988) 44 Cal.3d 480, 498 [testimony referring to defendant's parolee status was inadmissible character trait evidence, but did not constitute reversible error].)

While the challenged comment here was subject to the court's in limine ruling, we are not persuaded it was incurably prejudicial. Vaughan's vague and fleeting comment made no reference to any prior criminal conduct by defendant, a point the trial court made clear in its prompt admonition to the jury, stating, "There's absolutely no knowledge of any alleged possession of [a] concealed weapon on the part of [defendant]. Give it no weight or regard." The jury is presumed to be reasonable and to have followed the trial court's instructions and advisements. (*People v. Anzalone* (2013) 56 Cal.4th 545, 557; *People v. Thomas* (2012) 54 Cal.4th 908, 940; *People v. Harris* (1994) 9

5.

Cal.4th 407, 426.) In the absence of evidence to the contrary, we will presume the jury here followed the court's instruction.

Moreover, the jury heard evidence defendant was involved with the Colonia Bakers criminal street gang, and the gang's primary activities involved the possession and use of illegal firearms. We fail to see how Vaughan's vague reference to the past incident would be prejudicial in light of defendant's association with a criminal street gang that uses firearms to facilitate crimes such as murder, assault, robbery, burglary, and witness intimidation.

We also find no evidence the challenged comment was deliberately elicited by the prosecution, or the comment was intentionally volunteered by Vaughan to cause prejudice, as defendant argues. Not only was Vaughan's testimony regarding the incident vague, the prosecutor informed the court he had not explained the court's in limine ruling to Vaughan.

Because there is no evidence the challenged comment was either deliberately elicited or offered, the jury was exposed to evidence defendant was involved with a gang whose primary activities included the possession of illegal firearms, in addition to the fact the court provided a clear admonition to the jury, we reject defendant's argument the trial court committed reversible error by denying his motion for mistrial.

### B.     Second Motion for Mistrial

During recross-examination, defense counsel asked Vaughan whether Jose C. had heard of defendant and of Flaco, defendant's street moniker. Vaughan replied in the affirmative. Defense counsel then asked whether Jose C. had seen Flaco before. Officer Vaughan responded, "I believe [Jose C.] said that some of his cousins were in jail for doing a drive-by shooting on Flaco."

Defense counsel moved for a mistrial outside the presence of the jury, arguing the testimony was prejudicial. The court held the testimony was nonresponsive, but not prejudicial, and denied defendant's motion. The court also ordered the testimony stricken

6.

and promptly admonished the jury to "give neither the answer nor the question any weight whatsoever."

Defendant asserts his motion for mistrial was improperly denied. He specifically argues the comment supplied the jury with a motive for defendant to shoot Jose C.: retribution for the drive-by shooting Jose C.'s cousins perpetrated against defendant. He also contends the challenged comment was incurably prejudicial. We disagree.

No evidence supports defendant's argument that Vaughan's comment was prejudicial. Although the evidence was previously excluded as hearsay, it was not subject to a motion in limine.

Further, while defendant argues the comment supplied the jury with a motive for the shooting, the jury was already exposed to evidence suggesting the shooting was retaliation for a stabbing occurring earlier that day. Jose C.'s friends stabbed a friend of defendant's nephew, Jerry, sometime prior to the shooting. After the stabbing, several individuals made threats against Jose C. Jose C. also testified that after the incident, he was afraid to contact defendant.

We also reject defendant's argument the prosecutor had any prior knowledge Vaughan was going to testify about the drive-by shooting, or that Vaughan deliberately committed misconduct to prejudice the jury. First, Vaughan's comment occurred during cross-examination, and as the trial court found, it was not responsive to defense counsel's question. Second, the trial court ordered the comment stricken and admonished the jury to give it no weight. Even assuming the testimony were intentionally designed to cause prejudice, defendant has presented no evidence the jury was incapable of following the court's admonition. We find no error from the trial court's denial of defendant's motion for mistrial.

## II.    The Court's Instruction on Proximate Cause

Defendant was charged with an enhancement allegation for personally and intentionally discharging a firearm that proximately caused great bodily injury during the commission of attempted murder (§ 12022.53, subd. (d)).

During deliberations, the jury sent the court a note requesting the definition of "proximately," which appeared within a verdict form relating to the enhancement. The verdict form provided the following:  "We, the Jury, … find it to be true that [defendant] did personally and intentionally discharge a firearm which proximately caused great bodily injury or death to another person, … during the commission of Attempted Murder, within the meaning of … section 12022.53(d) …."

In response, the court read the following paragraph from CALCRIM No. 3149 to the jury:  "An act causes great bodily injury if the injury is the direct, natural, probable consequence of the act and the injury would not have happened without the act.  A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes."  After deliberations concluded, the jury found the enhancement allegation true.

Defendant contends the trial court erred in failing to instruct the jury sua sponte on multiple causes, the instruction under the bracketed paragraph of CALCRIM No. 3149 beginning with "There may be more than one cause …."  We find no error.

The court has a sua sponte duty to instruct on the definition and application of proximate cause if causation is at issue.  (*People v. Bland* (2002) 28 Cal.4th 313, 335 (*Bland*).)  In such circumstances, the court must instruct under the paragraph in CALCRIM No. 3149 beginning with "An act causes …."  Under this paragraph, an act causes great bodily injury if it sets in motion a chain of events producing great bodily injury as a natural and probable consequence of the alleged act, and without such act, great bodily injury would not have occurred.  (*Bland*, at p. 335.)  This instruction may be required, for example, where a bullet discharged by a defendant does not strike the victim, but the act is nonetheless a proximate cause of the victim's injury.  (See, e.g.,

*People v. Palmer* (2005) 133 Cal.App.4th 1141, 1153-1154 [finding defendant's act of discharging a firearm proximately caused officer's injury, although officer was injured diving for cover rather than from being shot].)

When the evidence suggests there may have been multiple causes of great bodily injury, the bracketed paragraph in CALCRIM No. 3149 beginning with "There may be more than one cause …" must also be given.

For example, in *Bland*, a section 12022.53, subdivision (d) enhancement was at issue. The defendant, an Insane Crips gang member, was standing with another man when the victim pulled up beside them in his vehicle. (*Bland*, *supra*, 28 Cal.4th at p. 318.) The defendant asked the victim if he was "Kebo," a member of the Rolling 20's Crips gang. Once the victim confirmed his identity, the defendant began shooting at the victim's vehicle. As the victim drove away, the defendant's companion also began firing at the vehicle. The victim died as a result of a gunshot wound; two other victims in his vehicle were also shot, but survived. (*Ibid*.) The evidence did not establish whose bullets struck the victims. (*Id*. at p. 334.) Although the court did not provide an instruction on proximate cause, the jury found the sentencing enhancement allegation true. (*Id*. at p. 318.)

Our Supreme Court concluded the trial court erred in not defining proximate causation because it is a term having a technical meaning most jurors would not understand. (*Bland*, *supra*, 28 Cal.4th at p. 335.) However, it found the error was harmless, reasoning, "jurors who improperly *limit* their discussion of what constitutes proximate cause will not find causation where it does not exist," because the term is broader than what jurors commonly understand causation to mean. (*Id*. at p. 338.)

Unlike *Bland*, causation was not at issue in this case. In *People v. Palmer*, *supra*, 133 Cal.App.4th at page 1153, the Second Appellate District court explained that proximate cause is at issue in two circumstances, "first, … where there is more than one shooter; and second … where the bullet itself does not hit the victim, but the discharge of

the firearm is nonetheless the proximate cause of the injury." Because no evidence even suggested the participation of more than one shooter, as in *Bland*, or that the bullets discharged by defendant's firearm failed to hit the victim, this case does not fall within either scenario. The issue in this case was the identity of the shooter. Accordingly, the court had no sua sponte duty to instruct on proximate cause, nor was the CALCRIM No. 3149 instruction on multiple causes appropriate here. Indeed, the trial court could simply have stricken the word "proximately" from the verdict form in response to the jury's question.

We also find the instruction given here could not have conceivably been misunderstood so as to prejudice defendant. As the *Bland* court stated, proximate causation is broader than what jurors commonly understand it to mean, and "jurors who improperly *limit* their discussion of what constitutes proximate cause will not find causation where it does not exist." (*Bland*, *supra*, 28 Cal.4th at p. 338.) Even assuming the facts of this case warranted an instruction on multiple causes, the jury need only have concluded defendant's act of shooting Jose C. was a substantial factor, i.e., more than a trivial or remote factor, in causing Jose C.'s injuries. (*Id.* at p. 335.) Accordingly, we find no error in the trial court's instruction.

## III. Ineffective Assistance of Counsel

Defendant contends that if defense counsel failed to proffer an adequate argument, to request an instruction, or to cite to adequate authorities, ineffective assistance of counsel was rendered. His contention is meritless.

A defendant claiming ineffective assistance of counsel in violation of his Sixth Amendment right to counsel must show (1) defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, (2) the deficient performance resulted in prejudice by depriving the defendant of a fair trial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *In re Jones* (1996) 13 Cal.4th 552, 561.) A criminal defendant has the burden of establishing, based on the record and on the

basis of facts, that defense counsel rendered ineffective assistance. (*People v. Mattson* (1990) 50 Cal.3d 826, 876–877.)

Defendant fails to carry his burden of establishing defense counsel rendered ineffective assistance of counsel. By not specifying the basis for his claim, he essentially asks this court to determine how defense counsel committed prejudicial error. However, the burden rests with defendant to "affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority." (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685.) This court is not required to search the record for facts in support of defendant's contention defense counsel's performance was deficient. (*In re S.C.* (2006) 138 Cal.App.4th 396, 406.)

Further, because we find no error, we also find no prejudice. To prove prejudice, the record must affirmatively demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.)

As previously set forth, we reject defendant's arguments his motions for mistrial were improperly denied, or that the court erred by failing to adequately instruct the jury on causation. Thus, we find no basis from which to infer defendant received ineffective assistance of counsel based on the foregoing arguments.

**DISPOSITION**

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
FRANSON, Acting P.J.


_____
SMITH, J.

11.